thereupon released from the Florida institution and began to undergo his Federal probation. Within five years from the date of his release by the State—but more than five years from imposition of the State sentence—he was adjudged [on June 2, 1948], to have violated the conditions of his probation and same was thereupon revoked and the original sentence ordered to be executed.

The Petitioner contends that the probationary period began on date of sentence [Feb. 19, 1943] and that the five-year probationary period had elapsed so as to render him immune to service of same. We think not.

The sentence imposed in the Federal Court was definite and certain. It stated that probation would begin upon his release from the Florida State Prison. It would continue thereafter for five years. He was released April 17, 1947, and it was within five years from that date that the violation occurred and the probation was revoked. From the record it is clearly ascertainable when the probation was to begin and equally clear that it was to end five years thereafter so that a revocation of probation within the term is in conformity to law.

Affirmed.

Watson Washburn, New York City, for petitioner.

Theron Lamar Caudle, Ellis N. Slack, Robert N. Anderson, C. Oliphant, Washington, D. C. (Morton K. Rothschild, Washington, D. C., of counsel), for respondent.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

## WHITMAN v. COMMISSIONER OF INTERNAL REVENUE.

No. 117, Docket 21464.

United States Court of Appeals
Second Circuit.

Argued Dec. 6, 1949.

Decided Dec. 22, 1949.

FRANK, Circuit Judge.

The taxpayer, in 1943 and 1945, was not only the president and treasurer but also the holder of all but a few shares of the company's stock.[1] In 1943, the company's directors, in a resolution awarding her $20,000, stated that this sum represented compensation for her services over a five-year period beginning in 1938 during which she had been paid nothing. But in 1945 the company—which obviously she dominated—in an application filed with the Salary Stabilization Unit of the United States Bureau of Internal Revenue (in order to induce that Unit to act as the company desired) specifically stated that she had been paid the $20,000 as pay for services rendered in the single year 1943. We cannot say that the Tax Court was "clearly erroneous" in finding the facts in accordance

1. She originally owned all the 2000 shares, but had given each of her three daughters 25 shares, retaining 1925.

with that 1945 statement.[2] That finding supports that court's decision that taxpayer is not entitled to the benefits of Section 107(a) of the Internal Revenue Code, as amended, 26 U.S.C.A. § 107(a).[3]

Affirmed.

## WOODS v. HAYDELL et al.

### No. 12535.

United States Court of Appeals Fifth Circuit.

Dec. 16, 1949.

Ed Dupree, General Counsel, Hugo V. Prucha, Asst. Gen. Counsel, Francis X. Riley, Sp. Litigation Atty., Office of Housing Expediter, Washington, D. C., J. Edwin Fleming, Lit. Atty., H. C. Happ, Reg. Atty., Dallas, Tex., for appellant.

P. C. Del Barto, Houston, Tex., for appellees.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

2. We need not consider the findings and conclusions of the Tax Court that, in any event, the taxpayer did not receive at least 80% of the total compensation in 1943.

3. That section reads: "If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual."